**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MELVIN S. LOCKETT, JANIS NIEMIEC** *and* **MARTIN A. KOVACS,** | ) CIVIL ACTION NO. 11-1314 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JOHN WETZEL, RANDY BRITTON** *and* **MARDI VINCENT** | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

## I. Introduction

On March 30, 2012, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Pennsylvania Department of Corrections ("DOC"), Secretary of Corrections John Wetzel ("Wetzel"), Deputy Secretary of Corrections Randy Britton ("Britton"), and Deputy Secretary of Corrections Mardi Vincent ("Vincent" and together with the DOC, Wetzel, and Britton, collectively "Defendants") filed a motion to dismiss (ECF No. 19) the amended complaint filed by Melvin S. Lockett ("Lockett"), Janis Niemiec ("Niemiec"), and Martin A. Kovacs ("Kovacs" and together with Lockett and Niemiec, collectively "Plaintiffs"). Plaintiffs filed the amended complaint on March 9, 2012 (ECF No. 17). The amended complaint contains two claims: 1) a federal claim under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourteenth Amendment rights; and 2) a Pennsylvania state law claim for violation of The Pennsylvania Whistleblower Law, 43 PA. STAT. § 1421 *et seq* ("Pennsylvania Whistleblower Law"). For the reasons set forth below,

the court will grant Defendants' motion to dismiss with respect to the § 1983 claim and dismiss the remaining claim without prejudice.

## II.    Factual and procedural background

On May 2, 2011, Plaintiffs were terminated from their respective positions with the DOC at the State Correctional Institution in Pittsburgh, Pennsylvania ("SCI-Pittsburgh").  (ECF No. 17 ¶¶ 38, 41).  Wetzel publically announced Plaintiffs' dismissal, claiming that the new managerial team would bring SCI-Pittsburgh in a "new direction."  (Id. ¶ 49).  Plaintiffs were informed that an investigation dating back to August 2008 led to their dismissal.  (Id. ¶ 42).

On October 14, 2011, Plaintiffs filed a complaint in this court against Defendants.  On February 24, 2012, this court granted Defendant's motion to dismiss the complaint with leave to amend.  On March 9, 2012, Plaintiffs filed an amended complaint.  The amended complaint alleges that Defendants violated Plaintiffs' Fourteenth Amendment right to procedural due process and their right to be free of retaliatory action under the Pennsylvania Whistleblower Law.  As relief, Plaintiffs request compensatory and punitive damages for loss of income, earning capacity, and employment benefits.  Plaintiffs also ask this court to grant an injunction to return Plaintiffs to their former positions at SCI-Pittsburgh.

In September 2010, Niemiec contacted SCI-Pittsburgh security personnel about concerns with the large number of sex offender requests for protective custody.  (Id. ¶ 12).  Eventually, the Office of Special Investigation and Intelligence ("OSII") conducted an investigation into inmate sexual abuse by corrections officers.  (Id.).  Plaintiffs claim to be entirely cooperative with OSII during this investigation and to have investigated and alleviated the problem themselves to the best of their abilities.  (Id. ¶¶ 15-31).  Despite the unusual number of requests for protective custody, no inmate filed an official grievance concerning sexual abuse from a corrections officer

during this time. (Id. ¶ 24). In April 2011, Deputy Secretary Shirley Moore-Smeal of the Corrections Central Office directed Lockett to suspend seven officers at SCI-Pittsburgh. (Id. ¶ 29). The dismissal of these officers and the allegations of inmate abuse were highly publicized. (Id. ¶ 49). Allegedly, these suspensions greatly angered the Pennsylvania State Correctional Officers Association ("PSCOA"). (Id. ¶ 33).

Plaintiffs allege that the public nature of their dismissals created a false impression in the public that they either allowed the alleged sexual abuse of inmates to continue or refused to take actions to stop it. (Id. ¶ 53). Shortly after the announcement of their terminations, "ranking Democrats on the state House and Senate Judiciary Committees" were quoted in a Pittsburgh Tribune Review article as saying "that suggests a significant level of wrongdoing." (Id. ¶ 54). Plaintiffs allege that the investigation into inmate abuse was only a smokescreen for the true reason to fire Plaintiffs. (Id. ¶ 33). The dismissals were an attempt to appease the PSCOA due to the PSCOA's support of Pennsylvania Governor Tom Corbett. (Id.). The PSCOA allegedly disliked Plaintiffs for their roles in opposing grievance demands filed by the PSCOA. Plaintiffs point out that they were not dismissed for performance reasons because the incoming transitional team that replaced them all remarked how well-run SCI-Pittsburgh was. (Id. ¶ 59). Plaintiffs note that "in the end, they were never given an opportunity to explain their actions." (Id. ¶ 53).

On March 30, 2012, Defendants filed a motion to dismiss the amended complaint on the basis that the factual allegations in the amended complaint are insufficient to state a plausible claim for relief. Defendants argue in seeking to dismiss the federal claim that any public statements made during the termination did not stigmatize Plaintiffs. Specifically, Defendants assert there were no allegations made in the amended complaint from which the court could plausibly infer that at the time of termination public statements were made by Defendants

concerning Plaintiffs' involvement in a sexual abuse scandal at SCI-Pittsburgh and that the federal claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## III.   <u>Standard of Review</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of the complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face."  <u>Id.</u>  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Id.</u> at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]— that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying allegations in the complaint that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Leave to amend pleadings is generally at the discretion of the trial court, Foman v. Davis, 371 U.S. 178, 182 (1962), and shall be given when justice so demands. Fed. R. Civ. P. 15(a). Typically, "even when [a] plaintiff does not seek leave to amend his complaint . . . unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008). A court, however, may decide to deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182 (1962). The district court's discretion to deny leave to amend is broadened as additional amendments become necessary. See Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) ("Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend.") (internal citations omitted).[1] The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile. In re Burlington Coat Factory Litig., 114 F.3d at 1434. An amendment is futile where the complaint, as amended, would fail to state a claim upon which relief can be granted. Id.; see Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (noting that failure to overcome the time bar of a statute of limitations renders a proposed amendment futile).

## IV.   **Discussion**

### A)  **Procedural Due Process Violation Claim**

In count I of the complaint, Plaintiffs assert a claim against the individual Defendants under 42 U.S.C. § 1983 for violations of procedural due process guarantees of the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs allege that the individual Defendants

> under color of state law and in violation of Plaintiffs' constitutional rights, have violated Plaintiffs' Fourteenth Amendment rights by discharging them from employment in a manner that led to a defamatory impression being left in the eyes of the public and potential future employers without any due process.

---

[1] See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) ("The fact that [Plaintiff] failed to correct these deficiencies in its Second Amended Complaint is 'a strong indication that the plaintiffs have no additional facts to plead.' *Vantive,* 283 F.3d at 1098. Accordingly, the district court did not err when it dismissed the SAC with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting. *See Metzler Investment,* 540 F.3d at 1072 (upholding a dismissal with prejudice where, *inter alia,* the deficiencies at issue 'persisted in every prior iteration of the[complaint]')").

ECF No. 17 ¶ 62.

To establish that the individual Defendants violated Plaintiffs' rights to procedural due process, Plaintiffs must show that they suffered damage to their reputations as a result of a false defamatory impression in connection with their public terminations and that they are entitled to a name-clearing hearing as a result of this stigma. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). Plaintiffs do not dispute that they are at-will employees. Although public employees do not have property rights in their at-will employment relationships, an employee may be entitled to bring a claim under § 1983 for violations of the Fourteenth Amendment arising from the deprivation of their liberty rights when the employee is publically terminated under false and defamatory circumstances. Id. In order to bring such a claim, a plaintiff must show he passes the "stigma-plus test."

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."

Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).

Here, for purposes of the motion to dismiss, the individual Defendants did not contest Plaintiffs' ability to satisfy the second requirement of the "stigma-plus" test under Hill. Id. at 238 ("conclude[d] . . . that a public employee who is defamed in the course of being terminated . . . satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost"). Following the holding in Hill, Plaintiffs' allegations in the amended complaint concerning their terminations from employment are sufficient for this court to infer that they could meet the "plus" aspect of the "stigma-plus" test. Id.

The amended complaint fails, however, to include factual allegations sufficient for the court to infer plausibly that Plaintiffs can meet the first requirement of the "stigma-plus" test. In order "[f]or government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is *substantially and materially false*." Ersek v. Township of Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996) (citing Codd, 429 U.S. at 627-29) (emphasis added). Not only does the statement need to be substantially and materially false, the reputational "harm must be *caused* by the falsity of the statement." Id. at 84 (emphasis added). The public statement referred to in the amended complaint is that the new team would bring a "new direction" to SCI-Pittsburgh. Standing alone, that public statement cannot plausibly be construed as "a substantially and materially false statement." Id.

The plaintiff in Ersek was a former employee of a municipal golf course who was suspected of overstating the number of paying customers, leading to financial discrepancies. The local police began an investigation into the plaintiff's activities. Id. at 81. After obtaining some evidence of impropriety, the police notified the Township Board of Commissioners (the "Board"). Id. Shortly thereafter, a Board representative made a public statement that claimed the Board was aware of the police activity from the beginning of the investigation and that the Board directed the entire undertaking. Id. This statement was wholly untrue. Id. The Court of Appeals for the Third Circuit concluded that the plaintiff in Ersek could not show that the statement accompanying his termination caused sufficient harm to give rise to a hearing to clear his name.

> The problem with Ersek's argument is that the *only* false statements were that the Board had been heavily involved in the investigation at the golf course. Notwithstanding Ersek's protestations, we cannot imagine that such fabrications caused more harm than would a statement that truthfully said that only the police and a few Township officials were investigating him. Should Ersek receive the hearing to which he claims he is entitled, the most for which he can seemingly ask

in the hearing is the opportunity to show that the investigation was not conducted by the Board and that any inference that the investigation was unusual is incorrect. That hearing could not be used to prove Ersek's innocence. He would still have hanging over his head the cloud of a police investigation. It seems fanciful that any golf course that refused to hire Ersek because of the statement actually given would now consider hiring him because only the police (and not the Board) were investigating him.

In sum, the false statements in this case simply have not caused Ersek harm that a name-clearing hearing could correct. It was the fact of the investigation, not who conducted the investigation, that might have injured Ersek's reputation.

Id. at 84-85.

Similar to the plaintiffs in Ersek, Plaintiffs do not plausibly support that the harm to their reputations was caused by the statement concerning a "new direction." If Plaintiffs were to receive a name-clearing hearing, Plaintiffs at most could rebut that Defendants actually wanted to take SCI-Pittsburgh in a "new direction." Plaintiffs would still have hanging over their heads the much publicized sexual abuse scandal at SCI-Pittsburgh in close proximity to their terminations. It seems far-fetched that Plaintiffs would have better employment prospects or better overall standing in the community if their terminations were not accompanied by Defendants' statement of "new direction." Similar to Ersek, it was the fact that Plaintiffs were terminated in the midst of the sexual abuse scandal, not Defendants' statement about taking SCI-Pittsburgh in a "new direction," that likely injured Plaintiffs' reputations.[2] Considering the

---

[2] See Brown v. Montgomery Cnty., No. 11-2130, 2012 WL 942645, at *3 (3d Cir. Mar. 21, 2012) (non-precedential).

> To satisfy the "stigma" prong of the test, the employee must show: 1) publication of 2) a substantially and materially false statement that 3) infringed upon the "reputation, honor, or integrity" of the employee. *Ersek v. Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996).
>
> Brown failed to satisfy the stigma prong of the test. Even if Commissioner Matthews' comments had been directed at him, such statements were not sufficiently stigmatizing to implicate a liberty interest. *Mercer v. Cedar Rapids*, 308 F.3d 840, 845-46 (8th Cir. 2002) ("[N]o liberty interest of constitutional significance is implicated when 'the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" (citation omitted)). Assistant County Solicitor Coggins's statements likewise described the employees' conduct at the gift exchange as having been improper and did little, if anything, to add to the stigma.

factual allegations of the complaint, this court cannot plausibly infer that the "stigma" prong of the "stigma-plus" test can be met.

In <u>Fraternal Order of Police Lodge No. 5 v. Tucker</u>, 868 F.2d 74 (3d Cir. 1989), the Court of Appeals for the Third Circuit implied that relief may be granted in situations where the statements made during termination are not in themselves false but the overall circumstances surrounding the termination are nonetheless defamatory. In <u>Tucker</u>, the court heard a claim by former employees of a police department concerning stigma related to statements made concerning drug use:

> When a police department announces to the media that it has information sufficient to occasion an investigation of on-duty drug use, that in this context the officer under investigation refused urinalysis, and that the Department considered the overall situation such as to warrant dismissal, other law enforcement agencies are unlikely to consider the officer for other employment because, at least without more information than that reported, they will conclude that the officer is more likely than not guilty as charged. Accordingly, if the plaintiffs had alleged and proved in this case that they had not used drugs behind the Cobb Creek Park tennis courts or that they had substantial evidence to tender at a hearing in support of such an allegation, they, at least arguably, would have made out a stigmatization case under the Due Process Clause.

<u>Id.</u> at 83.

The police department in <u>Tucker</u> never actually made a false statement, but the court noted that the overall circumstances surrounding an announcement could still result in sufficient stigma. <u>Id.</u>

---

<u>Id.</u> at *3; <u>Peters v. Houston</u>, No. 98-1580, 1999 WL 554581 (E.D. Pa. July 13, 1999) <u>aff'd sub nom. Peters v. Houstoun</u>, 225 F.3d 650 (3d Cir. 2000) (noting that the plaintiff failed to state a claim because the complaint did not allege that the statements were false or that the statements actually caused the plaintiff harm).

This case is factually distinguishable from Tucker.   In Tucker the statements were much more specific and they spoke to the reasons for termination.[3]   Id.   The defendants in Tucker terminated the plaintiffs for refusing to submit to urinalysis tests.   Refusal of a urinalysis test naturally results in suspicions of hiding drug use.   The defendants in Tucker never explicitly denied using drugs,[4] whereas Plaintiffs in this case alleged that they did not participate in or ignore the sexual abuse of inmates (ECF No. 17 ¶ 53).

The court of appeals in Ersek distinguished Tucker.

> In Tucker, a city suspended police officers after the officers refused to submit to urinalysis tests. See Tucker, 868 F.2d at 76. The city also issued a press release explaining its actions. See id. at 76-77. In discussing the officers' liberty interests, the court theorized that, had the officers been able to put forth evidence showing that they did not use drugs, they arguably would have made out a due process claim. See id. at 83. In other words, the court in Tucker, at least in dicta, might have allowed the officers to prove their innocence at a name-clearing hearing. However, the statements and their context in Tucker differ from those in the present case. The court in Tucker made clear that a reasonable person examining the statements and the dismissals would conclude that the officers more likely than not used drugs. See id. at 83. In contrast, the Township statement could not fairly be read as to charge Ersek with theft. The statement is careful to mention that the investigation was just that, an investigation. Ersek could not, then, use the name-clearing hearing to prove his innocence because the Township had not charged him with anything.

Ersek, 102 F.3d at 85 n.9.

Referring to a "new direction" does not speak clearly to the reasons for termination and is at best ambiguous about the reasons.   Wetzel never accused Plaintiffs of wrongdoing or even

---

[3] See Bishop v. Wood, 426 U.S. 341, 348 (1976) (noting that there is no deprivation of liberty, and thus no name-clearing hearing necessary, after "the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge").   But see Owen v. City of Independence, Mo., 445 U.S. 622 (1980) (affirming a Court of Appeals for the Eighth Circuit holding that the respondent deprived the petitioner of liberty without due process of law by publicizing false statements against the petitioner shortly before he was terminated, even though the statements were not the official reasons for the termination).

[4] "At trial, the parties stipulated that, if called, the witnesses in the arbitration proceeding would give the same testimony they gave before the arbitrator. . . . Before the arbitrator, none of the plaintiffs denied on-duty drug use." Tucker, 868 F.2d at 83.

implicated them in the wrongdoing.[5]  This court cannot infer that a reasonable person could conclude that Wetzel's referring to a "new direction" more likely than not insinuated that Plaintiffs were complicit in the sexual abuse of inmates, especially where there is no factual allegation that any individual Defendant or the DOC publicized the investigation into the sexual abuse of inmates at SCI-Pittsburgh.  In <u>Tucker</u> the public statements referred to a urinalysis test, which is used for one specific purpose: testing for drug use.  In this case the public statement about a "new direction" is ambiguous, possibly commenting, for example, on Plaintiffs' job performance[6] or the new management team's ideas for improvement.  Although one could speculate that Defendants implicated Plaintiffs in the ongoing sexual abuse scandal, the standard of review under <u>Twombly</u> requires more than speculation or possibility.  The amended complaint fails to allege any facts from which the court could plausibly infer that Wetzel's use of the phrase "new direction" caused the public to conclude that Plaintiffs were involved in the sexual abuse scandal.  The factual allegations of the amended complaint infer at most that Plaintiffs were fired in the midst of media publicity about the sexual abuse scandal.

Applying the holding in <u>Ersek</u>, this court concludes that the amended complaint fails to meet the pleading burden of <u>Twombly</u>.  Plaintiffs argue that "new direction" was a false statement by alleging that SCI-Pittsburgh was a well-run facility.  Plaintiffs fail, however, to allege facts to show that "new direction" was a substantially and materially false statement.  Additionally, the amended complaint does not plausibly support that the use of the phrase "new direction" during the public termination of Plaintiffs actually caused any damage to Plaintiffs that a name-clearing hearing could address.  Even if this court were to acknowledge the

---

[5] Plaintiffs admit that the DOC is defending and indemnifying them for charges brought by inmates allegedly subjected to abuse during Plaintiffs' tenure at SCI-Pittsburgh.  (ECF No. 17 ¶ 56).

[6] <u>See</u> <u>Brown</u>, 2012 WL 942645, at *3 (noting that "no liberty interest of constitutional significance is implicated when 'the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance'" (citation omitted)).

possibility of unusual circumstances that do not require a false statement as suggested in <u>Tucker</u>, the complaint fails to support that the inclusion of "new direction" would permit a reasonable person to conclude that more likely than not Plaintiffs acquiesced in the commission of sexual abuse.

Plaintiffs already amended the complaint once and there is no indication that there were any other statements made by Defendants. Under these circumstances the court concludes it would be futile to amend further.[7] As such, the court will dismiss the § 1983 claim without leave to amend. Plaintiffs are not foreclosed from filing a motion to reconsider or to reopen the case if they have information that defamatory statements were made by any individual Defendant.

### B) Pennsylvania Whistleblower Law Claims

As a result of the dismissal of the only claim (count I) supporting jurisdiction of this court, the court will decline to exercise jurisdiction over the state law claim (count II). <u>See</u> 28 U.S.C. § 1367(c)(3). Accordingly, the state law claim will be dismissed without prejudice. <u>See</u> <u>Elmore v. Cleary</u>, 399 F.3d 279, 283 (3d Cir. 2005) (holding that state claims dismissed because the court declined to exercise jurisdiction cannot be dismissed with prejudice); <u>Heffernan v. Hunter</u>, 189 F.3d 405, 414 n.8 (3d Cir. 1999) (same); <u>Figueroa v. Buccaneer Hotel Inc.</u>, 118 F.3d 172, 182 (Fed. Cir. 1999) (same).

### V.  <u>Conclusion</u>

For the reasons set forth above, count I (a claim for deprivation of procedural due process rights under the Fourteenth Amendment) must be dismissed without leave to amend and count II (a claim for violations of Pennsylvania Whistleblower Law) will be dismissed without prejudice.

---

[7] <u>See</u> <u>supra</u> note 1.

## ORDER

**AND NOW,** this 13th day of July, 2012, for the reasons set forth in the foregoing memorandum opinion, it is hereby ordered that the Motion to Dismiss (ECF No. 19) filed by Defendants John Wetzel, Mardi Vincent, Randy Britton, and the Pennsylvania Department of Corrections will be GRANTED; and it is hereby further ordered that count I of the amended complaint which asserts a claim under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment is dismissed without leave to amend and count II which asserts a claim under the Pennsylvania Whistleblower Law, 43 Pa. Stat. § 1421 *et seq*., is dismissed without prejudice. The clerk shall mark this case closed.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
U.S. District Judge